## SELLERS v. DEMPSEY.

(Supreme Court, Appellate Division, First Department.  February 11, 1898.)

1. PERSONAL INJURIES—DEFECTIVE APPARATUS—NEGLIGENCE.
   Plaintiff was injured by the fall of a dumb-waiter, operated from without the shaft by hand.  The apparatus was out of repair, but the defect which solely caused the accident was not known to defendant, the owner of the building, or to the janitor, plaintiff's employer.  The apparatus had been in use less than a year, and there was no evidence to show the necessity of its periodical inspection.  *Held*, that a motion for nonsuit should have been granted.

2. SAME—REPAIR OF PREMISES—OWNER'S LIABILITY.
   Defendant, not being plaintiff's employer, was only bound to keep the apparatus in such repair that persons rightfully using it would be reasonably safe.

Appeal from trial term.

Action by Lizzie Sellers against Bridget Dempsey for personal injuries.  From a judgment in favor of plaintiff, entered on the verdict of the jury, and from an order denying defendant's motion for a new trial, defendant appeals.  Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

M. P. O'Connor, for appellant.
John P. Foley, for respondent.

PATTERSON, J.  This is an appeal from a judgment in favor of the plaintiff and against the defendant, Bridget Dempsey, in an action brought to recover damages for injuries claimed to have been sustained by the plaintiff through the negligence of the defendant, and from an order denying a motion for a new trial.  The action was originally brought against Mrs. Dempsey and other defendants, who, it was claimed, were associated with her in the ownership of certain premises upon which the accident occurred which resulted in the plaintiff's injuries.  The complaint was dismissed as to all the defendants other than Bridget Dempsey.  It appeared in evidence that Mrs. Dempsey was, in a general sense, the owner of the premises referred to, and that she collected the rents thereof, and had the general administration of the property.  The premises consisted of an apartment or tenement house in which she employed a janitor by the name of O'Connell.  It was his business to take care of the house, and, as he himself testified, and among other things, to collect and remove the ashes from various apartments in the building.  As an appliance for the accomplishment of that purpose, there was in the building a dumb-waiter, used as a lift, and which was operated by hand, by means of two ropes; one at the right side

of the car, by pulling which that car was raised, and the other at the left side, by the use of which the car was lowered. It appears that the whole of this apparatus was put new into the building in January, 1894. In September, 1894, this plaintiff was employed by the janitor as his servant, and not as the servant of the defendant. On the 14th of September, 1894, the plaintiff used the lift for the purpose of bringing down to the basement ashes from several floors of the apartment house. She stood on the basement floor. The rope on the right-hand side of the elevator was out of order, and could not be used, and it had so been for about two weeks. She was, therefore, compelled to use, both for pulling up and lowering the car, the rope at the left side, in order to reach which it was necessary for her to put her head, or some portion of her body, into the elevator shaft. The car was at one of the upper stories. She leaned forward to pull the rope, when the car fell, and struck her on the head, inflicting injuries more or less serious in their character. In addition to the two ropes mentioned, there was a third rope, secured to the roof of the car, about the center of the roof, by which last-mentioned rope the car was held in place, and upon which the weight of the car was sustained. That center rope passed through a pulley secured at the top of the shaft. There was a small screw-bolt which was attached to the shaft, and which it was shown got worn out and loose, so that it would not fit in, and that loosened the shaft. It was proven that information of that particular defect was given to a son of the defendant, and it is quite clear that notice of it was brought home to the defendant Bridget Dempsey. The negligence attributed to the defendant is that she allowed the use on the premises of an unsafe apparatus which she furnished for the use of the tenants, the janitor, and those whose business it might be to assist him in the removal of ashes from the upper stories of the house; but no other fact indicating an unsafe condition was shown than as above stated. It appeared clearly in evidence given on behalf of the plaintiff that the real cause of the fall of the elevator was not the defect above referred to, of which the defendant had notice, but was the fraying and wearing out of the center rope which broke at about three feet above the top of the elevator car, and of which condition of that rope not even the janitor knew until after the accident. The testimony as to that is very plain. The plaintiff was not the servant of the defendant, but was the servant of O'Connell, the janitor. Hence the defendant did not owe to the plaintiff that duty which a master would owe to a servant, but she did owe to the plaintiff the exercise of ordinary care and prudence in the management of her property, which included the duty of maintaining the property in such reasonable repair and good condition as a person of ordinary care and prudence would exercise with reference to the uses of the property, and the circumstances under which it was enjoyed and used by the tenants or servants employed in the house. She owed the duty to keep this appliance in such repair that persons rightfully using it on the premises would be reasonably safe there. If the appliance fell into bad condition, the duty to repair or make it safe arose when notice of its condition was given or might

be imputed to the defendant. It was shown that the elevator was out of order, but it was also clearly shown that the accident was not in any way caused by the only defective condition of which the defendant had notice. That defect, it was proven, had nothing whatever to do with the fall of the elevator. At the close of the plaintiff's case, the defendant moved for a nonsuit on that ground. The motion should have been granted. There was not a word of proof to show that the defendant knew, or had notice, or could be chargeable with knowledge, of the condition of the center rope. The breaking of that rope was the sole cause of the accident. The only thing of which the defendant had notice was the want of the bolt on the sheave that raised and lowered the elevator. That had nothing to do with the breaking of the central rope, which sustained the weight of the car. As said before, it is entirely clear that it was the breaking of the central rope that caused the lift to fall. There was nothing to put the defendant on notice of that defect. It was the janitor's business to look after the lift and to use it. It was a mere appliance—a dumb-waiter—serving the uses of an apartment house. There was no evidence to show the necessity of periodical inspections of such an apparatus. A duty of that kind resting upon the owner in this case is not shown. The evidence is insufficient to raise that question. This was not a passenger elevator, but merely a dumb-waiter, operated by hand by a person standing on the floor outside the shaft in which the apparatus worked. The janitor states that the fact of this rope being frayed down to a point, he, whose duty it was to attend to the apparatus, observed for the first time after its fall. The apparatus was in his charge. "That [the rope] is what broke, and what caused the elevator to fall. The absence of the bolt, which I speak of, had nothing to do with the fall. The fall was due directly to the breaking of the rope." In that state of the evidence, we think it is apparent that the motion for nonsuit should have been granted. There was no proof to show the duty of inspecting, and it was clearly proven that the lift fell from a cause unknown to the defendant, and undetected by the janitor.

The judgment must therefore be reversed, and a new trial ordered, with costs to appellant to abide event.

VAN BRUNT, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur. O'BRIEN, J., concurs in result.